UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER HUNT,
an individual,

    Plaintiff,

v.

Case No.:

TRANS UNION LLC,
a foreign limited liability company,

    Defendant.
_____/

**PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION**

Plaintiff, CHRISTOPHER HUNT, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

**COMPLAINT**

**COMES NOW**, Plaintiff, CHRISTOPHER HUNT (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues the Defendant, TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter, "Defendant" or "Trans Union"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1. This is an action brought by an individual consumer for damages for Trans Union's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Trans Union improperly

1

reported and subsequently verified objectively-inaccurate information related to an alleged credit application submitted to FEBDESTINY (hereinafter, "Destiny") despite Plaintiff's repeated disputes to Trans Union explaining and proving that Plaintiff never applied for a credit card with Destiny and never authorized Destiny's inquiry into his Trans Union credit report or credit file.

## JURISDICTION, VENUE & PARTIES

2.  Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

3.  Defendant is subject to the jurisdiction of this Court, as Trans Union regularly transacts business in this District.

4.  Venue is proper in this District as the Defendant regularly conducts business in this District, and the acts and transactions described herein occur in this District.

5.  At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

6.  At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 W. Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

7.  Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

8. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

9. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

10. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

11. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

12. Under the FCRA, after a furnisher of information receives notification

pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

13.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

14.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

15.     At all material times herein, Plaintiff is a "consumer" as defined by the

FCRA, Section 1681a(c) because he is an individual and allegedly applied for a credit card with Destiny.

16. At all material times herein, Destiny, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Pinellas County, Florida.

17. At all material times herein, Destiny is a "person" who obtains consumer reports from credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681a(b).

18. At all material times herein, Trans Union furnished Plaintiff's consumer reports to Destiny resulting in a hard inquiry related to an alleged Destiny credit card application (hereinafter, the "Hard Inquiry").

19. At all material times herein, Plaintiff did not initiate or authorize a credit application for a Destiny credit card and identified the application as fraudulent.

20. At all material times herein, Trans Union is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

21. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

22. All necessary conditions precedent to the filing of this action occurred, or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

23. As of May 2024, Plaintiff's Trans Union credit score was approximately 825.

24. On about June 21, 2024, Destiny requested and obtained a copy of Plaintiff's consumer report from Trans Union in connection with an alleged credit application submitted to Destiny in Plaintiff's name.

25. Importantly, Plaintiff did not initiate or authorize Destiny to obtain his Trans Union report or any other credit reports belonging to Plaintiff at any time—certainly not in June 2024—and Plaintiff did not initiate any business transactions with Destiny.

26. Plaintiff never applied for credit with Destiny, Plaintiff never authorized any other individuals to apply for credit with Destiny in his name, Plaintiff never opened any accounts with Destiny, and Plaintiff never provided Destiny consent to obtain his credit reports.

27. The credit card application submitted to Destiny in Plaintiff's name was a result of attempted fraud and identity theft.

28. On or about June 21, 2024, Trans Union furnished Plaintiff's consumer report to Destiny resulting in a Hard Inquiry appearing on Plaintiff's Trans Union report.

29. As a result of the fraudulent Hard Inquiry, Plaintiff's Trans Union credit score dropped from approximately 825 to approximately 780.

30. On or about September 13, 2024, and following the fraudulent credit card application, Plaintiff completed an FTC Identity Theft Affidavit wherein Plaintiff swore under oath that he did not submit a credit application to Destiny resulting in the Hard Inquiry.

## PLAINTIFF'S FIRST DISPUTE

31. On or about September 18, 2024, and with the assistance of his attorneys, Plaintiff sent a letter to Trans Union disputing Trans Union's credit reporting of the Hard Inquiry, advising that the Hard Inquiry was a result of attempted identity theft and fraud, and therefore, the Hard Inquiry should be removed or delated from Plaintiff's Trans Union report or credit file (hereinafter, "Plaintiff's First Dispute").

32. Plaintiff's First Dispute provided sufficient information to allow Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of his social security number, and his current address.

33. Additionally, Plaintiff attached an executed and notarized copy of the FTC Identify Theft Affidavit regarding the fraudulent credit application and resulting Hard Inquiry.

34. Trans Union received Plaintiff's First Dispute.

35. Despite Trans Union receiving Plaintiff's First Dispute—including sufficient information for Trans Union to investigate and remove its reporting of the Hard Inquiry—Plaintiff did not receive dispute results from Trans Union regarding

7

Plaintiff's First Dispute.

36. Trans Union did not investigate or re-investigate Plaintiff's First Dispute.

37. On or about November 19, 2024, and because he did not receive dispute results from Trans Union, Plaintiff obtained a copy of his consumer report from Trans Union.

38. Despite Plaintiff's First Dispute, Trans Union *continued* reporting the fraudulent Hard Inquiry which continued to harm Plaintiff's credit scores based on information included in Plaintiff's Trans Union credit reports.

39. Clearly, Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's First Dispute, because if Trans Union had conducted a reasonable investigation, Trans Union would have known that the alleged credit application to Destiny reflected on Plaintiff's Trans Union report was a result of attempted identity theft and fraud.

40. Trans Union's failure to conduct a reasonable investigation into Plaintiff's First Dispute was unreasonable given the information provided in Plaintiff's First Dispute.

## PLAINTIFF'S SECOND DISPUTE

41. As of November 2024, Trans Union was still reporting Plaintiff's credit file inaccurately with a Hard Inquiry because of an alleged credit application to Destiny.

42. On or about November 20, 2024, with the assistance of his attorneys, Plaintiff sent *another* letter to Trans Union *again* disputing Defendant's credit reporting

of the Hard Inquiry (hereinafter, "Plaintiff's Second Dispute").

43. Plaintiff's Second Dispute provided sufficient information to allow Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of his social security number, and his current address.

44. Further, Plaintiff *again* attached a copy of the executed and notarized FTC Identify Theft Affidavit.

45. Plaintiff's Second Dispute *again* advised Trans Union that Plaintiff did not initiate or authorize a credit application with Destiny and that the credit application made to Destiny in Plaintiff's name was a result of fraud and identity theft.

46. Trans Union received Plaintiff's Second Dispute.

47. Despite Trans Union receiving Plaintiff's Second Dispute—including sufficient information for Trans Union to investigate and remove its reporting of the Hard Inquiry—Plaintiff did not receive dispute results from Trans Union regarding Plaintiff's Second Dispute.

48. Trans Union did not investigate or re-investigate Plaintiff's Second Dispute.

49. On or about January 15, 2025, and because he did not receive dispute results from Trans Union, Plaintiff obtained a copy of his consumer report from Trans Union.

50. Despite Plaintiff's First Dispute, Trans Union *continued* reporting the fraudulent Hard Inquiry which continued to harm Plaintiff's credit scores based on information included in Plaintiff's Trans Union credit reports.

51. Clearly, Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's Second Dispute, because if Trans Union had conducted a reasonable investigation, Trans Union would have known that the alleged credit application to Destiny reflected on Plaintiff's Trans Union report was a result of attempted identity theft and fraud.

52. Trans Union's failure to conduct a reasonable investigation into Plaintiff's Second Dispute was unreasonable given the information provided in Plaintiff's Second Dispute.

## DAMAGES

53. As a result of Defendant's unlawful continued reporting of the Hard Inquiry, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that he may either be denied credit or receive less favorable credit terms in the event he could obtain financing.

54. Following Plaintiff's First and Second Disputes, Trans Union generated and published Plaintiff's credit reports containing the unauthorized Hard Inquiry to at least one third-party.

55. Overall, Plaintiff suffered damage to his credit reputation as a result of Defendant's conduct.

56. More specifically, as a result of the Hard Inquiry by Destiny, Plaintiff's credit score as reported by Trans Union dropped from approximately 825 to approximately 780.

57. Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter

against the Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

58.   The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

59.   As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendant's continued reporting of the unauthorized Hard Inquiry and did not wish to further damage his credit score with credit inquires, and he was continually evaluated for credit using consumer reports that reported Plaintiff's credit file with inaccurate information as a result of identity theft and fraud.

60.   Additionally, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite reporting the identity theft and fraud, Plaintiff must simply endure Defendant's unlawful reporting of the Hard Inquiry.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

61.   Trans Union is subject to and violated the provisions of, 15 United States

Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

62. Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Hard Inquiry.

63. Despite Plaintiff's repeated disputes advising Trans Union that the Hard Inquiry should be suppressed or deleted from Plaintiff's Trans Union report or credit file, and demanding that Trans Union investigate and update accordingly, Trans Union continued to unlawfully report the Hard Inquiry resulting in a lower Trans Union credit score.

64. More specifically, Plaintiff's repeated disputes provided sufficient information to allow Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of his social security number, and his current address.

65. Further, Plaintiff's repeated disputes provided an executed and notarized copy of the FTC Identity Theft Affidavit wherein Plaintiff asserted that he did not submit a credit application to Destiny resulting in the Hard Inquiry.

66. Despite Plaintiff's repeated disputes, Trans Union continued to unlawfully report the Hard Inquiry in Plaintiff's credit file and on Plaintiff's consumer reports.

67. Such reporting of the Hard Inquiry is false and evidences Trans Union's

failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

68. The Hard Inquiry report on Plaintiff's Trans Union credit report or credit file is a result of attempted identity theft and fraud.

69. As such, it is inaccurate and/or materially misleading to report the Hard Inquiry as being authorized by Plaintiff personally.

70. Between about June 2024 and the date of this Complaint, Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading Hard Inquiry.

71. Overall, Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Trans Union credit reports and credit file.

72. As a result of Trans Union's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendant's continued reporting of the unauthorized Hard Inquiry and did not wish to further damage his credit score with credit inquires, and he was continually evaluated for credit using consumer reports that reported Plaintiff's credit file with inaccurate information as a result of identity theft and fraud.

73. Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

74. Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

75. Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

76. Specifically, Trans Union willfully and/or negligently refused to properly

investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

77. Despite Plaintiff's repeated disputes advising Trans Union that the Hard Inquiry should be removed or delated from Plaintiff's Trans Union report or credit file, and demanding that Trans Union investigate and update accordingly, Trans Union continued to unlawfully report the Hard Inquiry resulting in a lower Trans Union credit score.

78. More specifically, Plaintiff's repeated disputes provided sufficient information to allow the Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of his social security number, and his current address.

79. Further, Plaintiff's repeated disputes provided an executed and notarized copy of the FTC Identity Theft Affidavit wherein Plaintiff asserted that he did not submit a credit application to Destiny resulting in the Hard Inquiry.

80. After receiving Plaintiff's First Dispute and Second Dispute, Trans Union failed to request any additional documents from Destiny or Plaintiff regarding the Hard Inquiry.

81. Instead, following Plaintiff's First Dispute and Second Dispute, Trans Union simply continued to report the Hard Inquiry in Plaintiff's credit file and on Plaintiff's consumer reports.

82. Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

83. Despite receiving Plaintiff's First Dispute and Second Dispute, each of which explained that the credit application made to Destiny in Plaintiff's name was a result of identity theft and fraud because Plaintiff did not initiate a credit transaction with Destiny and did not authorize Destiny to obtain his Trans Union report or any other credit file, Trans Union *continued* to report the Hard Inquiry in Plaintiff's credit file and on Plaintiff's credit reports.

84. As such, Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Hard Inquiry was inaccurate and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

85. Such reporting is false and evidences Trans Union's failure to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

86. Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

87. Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

88. Trans Union's investigation/reinvestigation procedures are unreasonable.

89. Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Trans Union.

90. Trans Union's investigation/reinvestigations were *per se* deficient by

16

reason of these failures in Trans Union's reinvestigations of Plaintiff's disputes and the Hard Inquiry.

91. Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendant's continued reporting of the unauthorized Hard Inquiry and did not wish to further damage his credit score with credit inquires, and he was continually evaluated for credit using consumer reports that reported Plaintiff's credit file with inaccurate information as a result of identity theft and fraud.

92. Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

93. Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

    a. Judgment against Trans Union for maximum statutory damages for violations of the FCRA;

    b. Actual damages in an amount to be determined at trial;

      c.      Compensatory damages in an amount to be determined at trial;

      d.      Punitive damages in an amount to be determined at trial;

      e.      An award of attorney's fees and costs; and

      f.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*